[No. 1773.]

Elisha Lott *v.* The State.

1. Burglary — Charge of the Court.— It is a rule of practice in this State that the evidence and the charge of the court must conform to, and should be limited by, the specific offense set forth in the indictment. The indictment in this case, charging only that the entry was effected by "force," the trial court erred in giving in charge the provisions of the Penal Code upon the subject of burglary committed by means of threats and fraud. See the opinion *in extenso* on the question.

2. Same.— If, in expounding the offense of burglary as it is defined in the Code, the trial judge, in applying the law directly to the facts, had limited the action of the jury to a burglarious entry by force, as charged in the indictment, the charge would still be objectionably abstract, whether reversible error or not.

3. Same — Evidence.— Facts essential to be proved cannot be inferred. See the opinion for suggestions of this court in connection with accessible evidence, as apparent from the record, but which was not adduced on the trial.

Appeal from the District Court of Johnson. Tried below before J. W. Hall, Esq., Special Judge.

The indictment charged the appellant with the burglary of and theft from the house of H. F. Boyd, in Johnson county, Texas, on the night of the 3d day of October, 1884. The appellant's trial resulted in his conviction, and his punishment was assessed at confinement in the penitentiary for a term of two years.

H. F. Boyd was the first witness for the State. He testified that he lived in the town of Cleburne, Johnson county, Texas. Just after sundown on the evening of October 3, 1884, the witness traded for a Winchester rifle, which he placed inside his store, where he

already had a pistol. Witness fastened the doors of his store a short time after dark, and went home. On his return to his store the next morning at an early hour, he found that his store had been entered and the Winchester rifle, the pistol and some cigars taken away. Upon the sills of a back window the witness found some dirt, and noticed that the dust that had accumulated there had been disturbed. This window was kept raised all the time, but the space was crossed, up and down, by iron bars about four inches apart. The space between two of these bars had been sprung to about six inches, and in the opinion of the witness was large enough to admit the body of a boy, if assisted by some person on the outside and pushed through fish-fashion. It was a theory of the witness that a boy can be pressed through any hole that will admit his head. He did not believe a boy, unaided, could have effected an entrance between the bars described. Witness recovered his gun from the grand jury when he was called before that body to identify it and testify. The pistol was never recovered. Witness reported the burglary, on the morning after it occurred, to the sheriff and city marshal, and requested them to assist him in recovering the property, and told them if they found the cigars they could smoke them. The gun was a twenty-six shooting rifle.

On cross-examination, the witness expressed it as his opinion that the defendant could have been pressed through the space between the bars into the store, fish-fashion. He did not know who burglarized his store.

Jailor and deputy city marshal Keith was the next witness for the State. He testified that he was called upon by Boyd to apprehend the burglars, on the morning after the burglary of Boyd's store. During the day he found the defendant at a livery stable giving away cigars. Obtaining one of these cigars, witness took it to Boyd, who recognized it as one of the lot taken from his store. Witness then arrested the defendant and confined him in jail. While in jail the defendant told the witness that he and another boy named Jan Byrd went into Boyd's store between 1 and 2 o'clock through the window, and got a rifle, a pistol and some cigars, which articles they secreted under a brush pile about a mile from town. On the next morning the defendant piloted the witness to the brush pile, and the witness found the gun and one box and a half of cigars, but no pistol.

Cross-examined, the witness stated that when he had the conversation with the defendant, the defendant was under arrest and in jail. When the witness first mentioned the burglary to the defendant,

defendant denied all knowledge of it. Witness told him that it would do him no good to deny it; that he had caught Jan Byrd and had him " grabbed; " that if he, defendant, would tell him, witness, all about it, he would not be prosecuted or hurt, but would be turned loose. He then told the witness where the gun, pistol and cigars were secreted, and afterwards told him that he and Jan Byrd got and hid the articles in the manner stated. Witness did not warn the defendant that his statements would be used against him.

The defendant introduced Jan Byrd as his only witness. Byrd testified that he was with the defendant for a while on the night of October 3, 1884, on which night the burglary was alleged to have been committed. He and the defendant were at the theater together, and left it about 11 or 12 o'clock on that night. From the theater they went together to the livery stable, and there the witness saw the defendant climb over the stable door, which was open at the top, to go to bed. Witness went home and did not see the defendant again until next day. The witness did not go into Boyd's store on the night of the alleged robbery or any other night. The defendant was an orphan boy, who worked at the livery stable, and slept there because he had no other place to sleep. Witness was about the stable nearly every day, and always saw the defendant about there at work. Witness worked at the printing office and lived at home with his mother.

Cross-examined, the witness testified that he did not have any cigars in Cleburne on the day after the alleged burglary of Boyd's store, nor was he with the defendant at any time when defendant had any of Boyd's cigars. The witness was not about Boyd's store at any hour on the night of the alleged burglary.

The motion for new trial attacked the correctness of the charge of the court and the sufficiency of the evidence.

*W. Poindexter* filed an able brief and argument for appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

White, Presiding Judge. The indictment in this case charged a burglary committed by force in the night time, with intent to commit the crime of theft. "Force" was the only means alleged to effect the burglarious entry. In his charge the learned judge gave to the jury almost literally arts. 704, 706, 707, 708 and 709 of the Penal Code, which embrace not only a burglary by force but also threats and fraud,— in fact the full definition of all kinds of burglary known to our Code. Under the indictment the charge should

only have submitted the law applicable to a burglary by force, the rule being that the evidence and charge must conform to and should be limited by the specific offense set forth in the indictment. In other words, the charge must set forth the law applicable to the case, and the case is the offense as stated in the indictment and made by the proofs. (*Kouns* v. *The State*, 3 Texas Ct. App., 13; *Goode* v. *The State*, 16 Texas Ct. App., 411.) If not erroneous, a charge which goes outside of the case and brings into it matters foreign or not pertinent to the case made by the indictment is only calculated to confuse and mislead the minds of the jury as to the true issue; whereas the true object of a charge is to instruct, enlighten and make plain the law applicable to the facts upon which a conviction is claimed.

In more than one burglary case has this court been compelled to reverse the judgment because the charge of the court was not confined to the character of burglary as made by the charge in the indictment. We have endeavored to impress it upon trial judges that where the charge is a burglary by force alone the law of threats or fraud has nothing to do with it, nor under such an indictment is it essential that the jury should know even that a burglary may be committed by an entry accomplished by means of threats or fraud, at night. (See *Sullivan* v. *The State*, 13 Texas Ct. App., 463; *Weeks* v. *The State*, 13 Texas Ct. App., 466; *Buntain* v. *The State*, 15 Texas Ct. App., 485; *Goode* v. *The State*, 16 Texas Ct. App., 411.)

To have given the definitions of the offense as stated in the Code, whilst abstract, would not perhaps have amounted to reversible error if the judge, in his application of the law directly to the facts, had properly limited the action of the jury to a burglarious entry by "force," as stated in the indictment. This, however, is not done. They were told in that connection that, if defendant "either alone or partly with some other person did enter the house of H. F. Boyd in the night time, without the consent of said H. F. Boyd, with the fraudulent intent of committing the offense of theft, as herein defined, then in case you so believe you will find defendant guilty," etc. They were nowhere told that they must find that the entry was made by "force," or they should not convict. Under the charge as given it was only necessary that they should find *an entry* without the consent of Boyd. Such an entry, even with the intent to commit theft, would not be burglary unless the entry was accomplished either with the use of "force," "threats" or "fraud," and in this case neither threats nor fraud, nor, indeed, both combined, would suffice, because the offense was charged to have been com-

mitted by "force," and by "force" alone. The original abstract error in the charge became fatal when the court failed to correct it in the application of the law to the facts.

We deem it necessary to call the attention of the prosecution to another matter which is called to our attention by the able brief of counsel for appellant. This prosecution rests upon the confessions of the appellant, corroborated by the discovery of the stolen property by means of the confession. Now if this be so, why was not the gun which was found by the officer identified as the property of the injured party? If it was, the statement of facts should have shown it; there should have been no doubt about the identification of the property after the finding. As it was, the statement of facts only shows with certainty that the owner identified a cigar which the officer got the next morning from defendant, and not from the place where the stolen property was found. Boyd does say he got back his gun from the grand jury, but defendant is in no manner connected with this gun which the grand jury gave back to Boyd. We cannot indulge in inferences and conclusions with reference to facts which it is essential to prove. As stated in this record, none of the property found by means of the confession was identified as that of Boyd.

It is unnecessary to discuss the other questions raised. Because the court's charge to the jury was erroneous in the particulars pointed out, the motion for rehearing is granted, the former judgment of affirmance set aside, and the judgment reversed and the cause remanded for a new trial.

*Reversed and remanded.*

[Opinion delivered February 28, 1885.]